UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

DEVIN KEITT,                                          :

                Plaintiff,                   :     09 Civ. 5663 (PKC) (DF)

    -against-                                        :     **REPORT AND**
                                                         **RECOMMENDATION**

THE CITY OF NEW YORK; JOHN HENRY DOE        :
AS COMMISSIONER OF THE NEW YORK
CITY POLICE DEPARTMENT; ANDY                  :
SEEWALD, PETE MASSA, JOHN DOE # 2
THROUGH 14, AS MEMBERS OF THE NEW            :
YORK CITY POLICE DEPARTMENT, IN THEIR
INDIVIDUAL AND OFFICIAL CAPACITIES,          :

               Defendants.                 :
-----------------------------------------------------------------------X

**TO THE HONORABLE  P. KEVIN CASTEL, U.S.D.J.:**

       In this action, *pro se* plaintiff Devin Keitt ("Plaintiff") alleges that, on June 8, 2005, he

was racially profiled, falsely arrested and imprisoned, subjected to suggestive and tainted

identification procedures and a conspiracy to manufacture false charges, and denied medical

treatment, all in violation of his First, Fourth, Fifth, Sixth, Eighth and 14th Amendment rights

and Article I of the New York State Constitution.  The defendants that have, to date, been served

and appeared in this case – the City of New York (the "City"), and Police Commissioner

Raymond Kelly (named herein as "John Henry Doe, as Commissioner of the New York City

Police Department")[1] – now move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint

on a number of grounds, including that Plaintiff's claims are barred by the applicable statutes of

---

[1] Raymond Kelly is the current Commissioner of the New York City Police Department.
(*See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Pursuant
to Rule 12(b)(6) of the Federal Rules of Civil Procedure dated Oct. 26, 2009 ("Def. Mem.")
(Dkt. 15), at 1 n.1.)

limitations.  For the reasons set forth herein, I recommend that the pending motion to dismiss (Dkt. 14) be granted and that the Complaint be dismissed as to the moving defendants.  Further, because Plaintiff's claims against the remaining defendants would be subject to dismissal for the same reasons, I also recommend that the Court *sua sponte* dismiss the Complaint as to those defendants as well, even if they have not yet appeared in the action.

## BACKGROUND[2]

A.      **Plaintiff's Arrest, Incarceration, and Legal Assistance from Another Inmate**

According to the Complaint, Plaintiff was arrested on June 8, 2005, by officers of the New York City Police Department, including defendants Andy Seewald ("Seewald") and Pete Massa ("Massa"), in connection with the robbery of a gas station.  (*See* Complaint dated May 27, 2009 ("Compl.") (Dkt. 2) at ¶¶ 11-58.)  Plaintiff was charged with Robbery in the First Degree, among other related charges (*see* Plaintiff's Rap Sheet, dated July 11, 2007 ("Rap Sheet"), attached as Ex. A1 to Compl.), and was convicted by a jury on February 7, 2006.  (*See id.* at 17.)  Plaintiff is currently incarcerated at Elmira Correctional Facility ("Elmira").  (*See* Transcript of Telephone Conference before this Court, dated Mar. 19, 2010 ("3/19/10 Tr.") (Dkt. 25) at p. 10, l. 17.)

Previously, while incarcerated at Upstate Correctional Facility, Plaintiff met another inmate, named Bruce M. King ("King").  (*See* Transcript of Telephone Conference before this Court, dated Nov. 13, 2009 ("11/13/09 Tr.") (Dkt. 23) at p. 10, ll. 10-21.)  On January 21, 2009,

_____

[2] For purposes of this motion, any facts set forth herein are taken primarily from Plaintiff's Complaint, dated May 27, 2009, materials annexed thereto, and statements made by Plaintiff on the record in telephone conferences before this Court on November 13, 2009, January 15, 2010, February 2, 2010, and March 19, 2010.

Plaintiff informed King that he "was dyslexic, [and] had not been able to acquire assistance from New York State Department of Correctional Services (DOCS) Law Library." (*See* Affidavit/Affirmation of Bruce M. King, sworn to May 12, 2009 ("King. Aff."), attached as Attachment A to Compl., at ¶ 1.)  According to King, Plaintiff asked him to read Plaintiff's appellate brief and "provide[] a verbal synopsis of its contents." (*See id*. at ¶ 2.)  On February 17, 2009, Plaintiff asked King to read and summarize Plaintiff's reply brief on appeal, and again King did so.  (*See id.* at ¶ 3.)  Between February 15 and 21, 2009, King requested and obtained all documents related to Plaintiff's criminal conviction.  (*See id.* at ¶ 4.)  On February 23, 2009, King told Plaintiff that "his arrest was in violation of [the] First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and about [a] Police cover-up," and explained to Plaintiff "the fraud on behalf of the prosecution." (*Id.* at ¶¶ 5-6.)

At King's suggestion, Plaintiff filed an Inmate Grievance Complaint with DOCS on February 23, 2009.  (*See id.* at ¶ 7.)  In his grievance complaint, Plaintiff asked the law library to help him prepare his Section 1983 and Article 78 claims because he was learning disabled, could not read or write, and had a deadline.  (*See* Inmate Grievance Complaint # UST-38392-09 dated Feb. 23, 2009, attached as Ex. A1 to Compl.)  Further, on February 24, 2009, Plaintiff sought assistance from this Court's *Pro Se* Office.  (*See* King Aff. at ¶ 9; Letter to *Pro Se* Clerk from Plaintiff, attached as Ex. A2 to Compl.)  The *Pro Se* Office responded on March 4, 2009, enclosing the forms Plaintiff needed to initiate an action pursuant to 42 U.S.C. § 1983.  (Letter to Plaintiff from *Pro Se* Office Clerk M. Santiago, dated Mar. 4, 2009, attached as Ex. A2 to Compl.)

B.   **Plaintiff's Complaint and the Instant Motion**

On May 27, 2009, with King's assistance, Plaintiff filed his Complaint in this action,[3] asserting putative claims under 42 U.S.C. §§ 1981, 1983, 1985 and 1986, and the state constitution.[4]  On October 26, 2009, the City and Commissioner Kelly (together, "Defendants") filed their motion to dismiss the Complaint.  Construing Plaintiff's claims as arising under Section 1983 and state law, Defendants argued, *inter alia*, that Plaintiff's claims are time-barred by the applicable statutes of limitations.  (*See* Def. Mem. at 2, 5-7.)  In particular, Defendants argued that Plaintiff's claims accrued at the time of his arrest in 2005, but that he did not file his Complaint until nearly four years later, in 2009, well outside the three-year limitations period applicable to Section 1983 claims and the one-year-and-90-day limitations period applicable to state claims against the City or its employees.  (*See id.* at 6-7.)

In a series of telephonic case management conferences before this Court, Plaintiff informed the Court that he had dyslexia,[5] and, because of this, he would not be able to prepare

---

[3] Under the so-called "prison mailbox rule," *see Houston v. Lack*, 487 U.S. 266, 270 (1988), a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the court.  Therefore, although Plaintiff's Complaint was not entered on the Court's docket until June 1, 2009, the Court will consider it to have been filed as of May 27, 2009, the date it was signed by Plaintiff.  *See, e.g.*, *Luna v. Artus*, No. 10 Civ. 2565 (PKC) (KNF), 2010 U.S. Dist. LEXIS 60927, at *2 n.1 (S.D.N.Y. June 18, 2010).

[4] Plaintiff's Complaint also cited 42 U.S.C. § 1988 (*see* Compl. at ¶ 1), which does not create an independent right of action, but rather provides, *inter alia,* that the federal courts' jurisdiction in federal civil rights actions "shall be exercised and enforced in conformity with the laws of the United States" or, in cases where federal statutory law is "not adapted to the object, or [is] deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by . . . [state] constitution[s] and statutes" that are not inconsistent with federal law.  42 U.S.C. § 1988(a).

[5] According to one source, "dyslexia" is an "impairment of the normal ability to read, due to a defect in the brain."  J.E. Schmidt, M.D., 2-D *Attorneys' Dictionary of Medicine* 37045 (2009).

4

opposition papers without assistance.  (*See* 11/13/09 Tr. at p. 5, l. 24 - p. 8, l. 1.)  Plaintiff

explained that, although King had been assisting him, Plaintiff lost that assistance when he was

transferred to Elmira.  (*See id.* at p. 10, ll. 10-21.)  Plaintiff also told the Court that, when King

was later transferred to Elmira, as well, Plaintiff requested permission for King to help him again

with his legal paperwork, but received no response.  (*See* Transcript of Telephone Conference

before the Court, conducted Feb. 2, 2010 ("2/2/10 Tr.") (Dkt. 22) at p.3 ll. 12-16.)[6]

On February 16, 2010, following a conference with the parties, the Court issued an Order

stating that, in addressing Defendants' motion, it would first focus on Defendants' statute of

limitations arguments.  (*See* Order dated Feb. 16, 2010 (Dkt. 21), at 2.)  The Court directed

Plaintiff to respond, in the first instance, only to those arguments.  (*See id.*)  The Court instructed

Plaintiff that, if he were able to obtain assistance in preparing opposition papers, then he should

serve and file his opposition, on the statute of limitations issue, by March 19, 2010.  (*Id.*)  If, on

the other hand, he were unable to obtain such assistance, then, the Court stated, it would instead

hear oral argument from all parties on that date.  (*See id.*)[7]

_____

[6] Apparently, permission was never granted, and when Plaintiff's legal documents were discovered in King's cell, King was "keep-locked" for helping Plaintiff file his legal paperwork without official authorization.  (*See id.* at p. 2, l. 25 - p. 4, l. 3.)  When a prisoner is placed on "keep-lock," it means the prisoner cannot leave his cell.  (*See id.* at p. 3, ll. 6-8.)

[7] In the February 2, 2010 conference that preceded the Court's issuance of its February 16 Order, the Court further explained to Plaintiff that, if the Court afforded him an opportunity for oral argument in lieu of briefing, then the transcript of his argument would become part of the record on the motion.  (*See* 2/2/10 Tr. at p. 10, ll. 1-12; *see also* 3/19/10 Tr., at p. 2, ll. 14-19.)

### C.   <u>Plaintiff's Oral Argument</u>

In lieu of submitting written opposition papers, Plaintiff proceeded to present oral argument at a telephone conference before the Court on March 19, 2010.  (*See* 3/19/10 Tr.) Plaintiff stated that he was born with dyslexia, which prevented him from "learning and reading and writing and working as an average person on the same playing field."  (*Id.* at p. 3, l. 25 - p. 4, l. 3.)  Plaintiff argued that, because of his dyslexia, he was unable to read and write and did not know that his constitutional rights had been violated, until King brought this to his attention more that three years after his arrest.  (*See generally id.*)  Plaintiff maintained that he could only read and write with great difficulty, and, but for his dyslexia, he would have addressed his claims in 2005.  (*Id.* at p. 4, ll. 9-23.)

When asked if he had ever tried to file any type of grievance with the prison in 2005, Plaintiff said that he did not know he could, reiterating that he had "just learned [his] constitutional rights when [he] was in the cell with King for a whole year."  (*Id.* at p. 5, ll. 6-19.) Plaintiff said that he could read at roughly a second-grade reading level and had to ask people to read him letters from counsel or the Court.  (*Id.* at p. 6, l. 25 - p. 7, l. 20.)[8]  Plaintiff further explained that he could recognize and identify small words like "the," "it," and "is," but said that, "when it gets intense[,] [he] can't do it."  (*Id.* at p. 7, ll. 21-23.)  When asked if anyone in the law library or prison could have helped him prepare a complaint, Plaintiff answered that he had been relying on his appellate attorney and, while his criminal appeal was still pending, he

---

[8] In a prior telephone conference, Plaintiff stated that, while he is not illiterate, he reads very slowly and has to read something "four or five times to fully understand."  (11/13/09 Tr. at p. 7, ll. 5-11; p. 11, ll. 2-11.)  With respect to his ability to write, he previously stated that it takes him a very long time to write, and that his letters are often formed backwards.  (*See id.*)

did not know to go to the law library for help with his case.  (*See id.* at p. 11, ll. 9-23.)  Plaintiff

elaborated that he had "just learned about constitutional violations," after King had explained to

him that "in civil law you are the prosecutor," whereas "in criminal law you are a defendant,"

and this was why Plaintiff was "now on complaint."  (*Id.* at ll.13-17.)

Plaintiff further reported that he had been unable to obtain any help finding and reading

case law on the subject of equitable tolling of a statute of limitations on the ground of disability,

and that the only information he had regarding the statute of limitations was from King.[9]  (*See id.*

at p. 11, l. 24 - p. 12, l. 4.)  Plaintiff argued, though, that "the statute of limitations start[s] from

the time that you are made aware of the constitutional violation," and that the relevant issue is

"when you became aware that you had suffered some kind of wrong for which you might be able

to seek to recover damages."  (*Id.* at p. 12, ll. 5-9.)  Plaintiff maintained that, while, at the time of

his arrest, he was aware of what had happened to him, he did not know that there had been any

constitutional violation for which he could sue, until King read all of his case materials in

January of 2009.  (*See id.* at p. 12, l. 10 - p. 13, l. 7.)

When the Court asked if there was any existing documentation of Plaintiff's reading

level, Defendant's counsel pointed out that the only documentation Plaintiff had produced was

his Individualized Education Program form from 1995, classifying Plaintiff as "learning

disabled," but not specifically mentioning dyslexia.  (*See id.* at p. 14, ll. 5-12; *see also*

Individualized Education Program Form #25-6300.00.3 ("IEP Form"), dated Apr. 8, 1995,

---

[9] In a prior conference, Plaintiff mentioned that he had experienced difficulty reviewing
Defendants' motion to dismiss because "the prison system provides very little assistance to
dyslexic prisoners."  (11/13/09 Tr. at p. 6, ll. 2-3.)  Plaintiff explained that, while the Department
of Corrections "make[s] provisions for illiterate people . . . [t]hey don't consider dyslexic and
illiterate the same thing."  (*Id.* at p. 6, ll. 17-24.)

attached as Ex. A to Compl.)  Plaintiff explained that dyslexia was not on his IEP Form because it was a confidential medical diagnosis.[10]  (*See* 3/19/10 Tr. at p. 15, ll. 4-7.)

Plaintiff said he had told an education supervisor at Elmira that, because he was dyslexic and could not pass tests, he had cheated on tests in the past in order to avoid going to school at the facility.  (*See id.* at p. 15, l. 21- p. 16, l. 4 (noting that "in the Department of Correction[s] they make you go to school in some facilities").)  According to Plaintiff, the education supervisor then gave him a waiver from school because "he understands that the Department of Corrections is not making any accommodations."  (*Id.* at p. 16, ll. 5-7.)  Plaintiff stated that some of his reading scores were "inaccurate because [he] cheated" and that, consequently, the Department of Corrections "was unable to get a full description of where [he] was supposed to be placed."  (*Id.* at p. 17, ll. 10-13.)  He stated that, at Elmira, he had initially been placed in a special education program "in the lower school level," but he "just signed out" of that program. (*Id.* at p. 17, ll. 13-16.)

This Court liberally construed Plaintiff's oral argument as an argument that any applicable statutes of limitations should be found to have been tolled because of his claimed disability of dyslexia (*see id.* at p. 7, l. 25 - p. 8, l. 6), and directed Defendants' counsel to file reply papers addressing the equitable tolling issue (*see id.* at p. 21, ll. 15-20).  Defendants submitted a reply brief on April 9, 2010, addressing Plaintiff's arguments.  (*See* Defendants'

---

[10] Plaintiff further stated that he had been having a hard time obtaining his medical documents, which he stated that he also needed for "[an]other situation [with the] Department of Corrections" (*id.* at p. 14, l. 18- p. 15, l. 3), and that he had signed a medical release, in the hope that Defendants' counsel would be able to obtain his medical history and any medical diagnosis he had "pertaining to [the] [B]oard of [E]ducation" (*id.* at p. 15, ll. 6-11).

Reply Memorandum of Law if Further Support of Their Motion to Dismiss dated Apr. 9, 2010 (Dkt. 26).)

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARD

### A.   Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure when it is not "legally sufficient" to state a claim upon which relief may be granted. *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991).  In deciding a 12(b)(6) motion, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).

Where, as here, a plaintiff is proceeding *pro se*, the Court must construe the pleadings liberally, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), and "interpret them to raise the strongest arguments that they suggest" *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (a *pro se* plaintiff's pleadings, "however inartfully pleaded" are held "to less stringent standards than formal pleadings drafted by lawyers" (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972))).  Further, while the Court generally "may not look outside the pleadings when reviewing a 12(b)(6) motion to dismiss," *Gadson v. Goord*, No. 96 Civ. 7544 (SS), 1997 U.S. Dist. LEXIS 18131, at *2 n.2 (S.D.N.Y. Nov. 13, 1997), the requirement that a *pro se* plaintiff's allegations be construed liberally makes it appropriate for the Court to consider factual allegations made in the plaintiff's opposition

memorandum, as long as they are consistent with the complaint, *see Braxton v. Nichols*, No. 08 Civ. 08568 (PGG), 2010 U.S. Dist. LEXIS 25652, at *3 (S.D.N.Y. Mar. 18, 2010) (citing *Coakley v. 42nd PCT. Case 458*, No. 08 Civ. 6202 (JSR) (RLE), 2009 U.S. Dist. LEXIS 89437, at *7 (S.D.N.Y. Aug. 21, 2009) (Report & Recommendation), *adopted by*, 2009 U.S. Dist. LEXIS 89372 (S.D.N.Y. Sept. 29, 2009)); *see also Gill v. Mooney*, 824 F.2d 192, 194-95 (2d Cir. 1987).  By the same logic, the Court may consider factual allegations asserted orally by a *pro se* plaintiff, in opposition to a dismissal motion.

Though the Court will construe a *pro se* plaintiff's pleadings liberally, the plaintiff is still required to comply with all "relevant rules of procedural substantive law."  *Bisson v. Martin Luther King Jr. Health Clinic*, No. 07 Civ. 5416, 2008 U.S. App. LEXIS 23977, at *2 (2d Cir. Nov. 20, 2008) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  Any "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citing *Smith v. Local 819 I.B.T. Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

## II.   DEFENDANTS' MOTION TO DISMISS

### A.   Plaintiff's Federal Claims

As noted above, Plaintiff, in his Complaint, purports to assert claims under a number of federal statutes (42 U.S.C. § 1981, 1983, 1985, and 1986), although Defendants treat the Complaint as arising under Section 1983.  For statute of limitations purposes, this distinction is of no consequence, as none of the other sections of Title 42 cited by Plaintiff have been interpreted to provide for a longer limitations period than Section 1983.  (*See infra* at n.11.) Accordingly, this Court will similarly focus its analysis on Plaintiff's Section 1983 claim.

### 1.   Assertion of Claims Outside the Applicable Limitations Periods

Section 1983 provides a vehicle for a plaintiff to assert a federal constitutional claim against a state actor.  The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  An action against a public servant in his official capacity is treated as a suit against the relevant governmental agency itself, *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007), and a municipality – or an agency thereof – is a "person" for purposes of Section 1983 and, therefore, may be sued thereunder, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Reynolds*, 506 F.3d at 190.

In considering Section 1983 claims, courts should apply "'the general or residual [state] statute [of limitations] for personal injury actions.'"  *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d

Cir. 1997) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (alteration in original)); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007).  Accordingly, "New York's three-year statute of limitations for unspecified personal injury, New York Civil Practice Law and Rules § 214(5), governs Section 1983 actions in New York."  *Ormiston,* 117 F.3d at 71.[11]

Federal law, however, governs the date when a Section 1983 claim "accrues," meaning the date when the statute of limitations begins to run.  *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980); *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).  Under federal law, this limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Singleton*, 632 F.2d at 191 (citation and quotation marks omitted); *see also Wallace*, 549 U.S. at 388 (stating accrual occurs when plaintiff has a complete and present cause of action (citations and quotation marks omitted)).  In cases alleging claims of false arrest or imprisonment, the statute of limitations starts to accrue once "legal process is initiated and the allegedly false imprisonment or arrest comes to an end."  *Garcia v. City of New York*, No. 06 Civ. 746 (LTS) (DCF), 2009 U.S. Dist. LEXIS 85370, at *9 (S.D.N.Y. Sept. 17, 2009) (citing *Wallace*, 549 U.S. at 389-90).

Here, Plaintiff's federal claims all accrued in June 2005, when he was allegedly racially profiled, falsely arrested, imprisoned, and denied medical care.  More specifically, he was

---

[11] The three-year statute of limitations governing Section 1983 claims applies to claims arising under Sections 1981 and 1985, as well.  *See Cortes v. City of New York,* No. 08 Civ. 4805 (LTS) (RLE), 2010 U.S. Dist. LEXIS 31054 at *26 (S.D.N.Y. Mar. 30, 2010) (citing *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002); *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)).  Section 1986, on the other hand, expressly provides for a shorter (one-year) limitations period.  *See* 42 U.S.C. § 1986; *see also Poux v. County of Suffolk*, No. 09 Civ. 3081 (SJF) (WDW), 2010 U.S. Dist. LEXIS 44399, at *37 (E.D.N.Y. May 4, 2010); *Davis v. Travis*, No. 07 Civ. 3047 (WHP), 2008 U.S. Dist. LEXIS 99801 at *9 (S.D.N.Y. Dec. 3, 2008).

arrested on June 8, 2005, and arraigned two days later, on June 10, 2005.[12]  (*See* Rap Sheet at 18.)  None of Plaintiff's claims relate to injury arising out of any other events, and thus, for any of his federal claims to be considered timely, they must have been asserted no later than June 2008.  As noted above, however, Plaintiff did not file his Complaint in this action until May 2009.

To the extent Plaintiff's statement that "the statute of limitations start[s] from the time that you are made aware of the constitutional violation" (3/19/10 Tr. at p. 12, ll. 5-6; 12, l. 10 - p. 13, l. 14) can be construed as an argument that his claims did not accrue until January 2009, when King allegedly informed him of his rights, Plaintiff misunderstands the law.  It is well established that accrual of the statute of limitations does not depend on a plaintiff's knowledge of the law, but rather on a plaintiff's knowledge of the injury.  *See Singleton*, 632 F.2d at 191; *Pearl*, 296 F.3d at 80.  While Plaintiff may not have been aware there had been a "constitutional violation" until King advised him, Plaintiff was certainly aware of his injuries in June 2005, when they occurred.  At that time, Plaintiff knew that he had been held by the police, subjected to identification procedures that he considered flawed, and denied medical attention.  (*See* Compl. at ¶¶ 43-79.)  The fact that Plaintiff may have been unaware that he had legal claims arising out of those events is of no consequence.  *See Venticinque v. Brown*, No. 09 Civ. 2861 (DLI) (MDG), 2010 U.S. Dist. LEXIS 36631, at *4 (E.D.N.Y. Apr. 14, 2010) ("The date on which a plaintiff knew or had reason to know the injury was *actionable* is irrelevant." (citations omitted) (emphasis in original)).  Consequently, Plaintiff's claims are untimely.

---

[12] The statute of limitations on Petitioner's false imprisonment claim began to run when he was arraigned on charges.  *See Wallace*, 549 U.S. at 389-90.

### 2.      Potential Grounds for Tolling of the Limitations Period

In order to avoid dismissal of his untimely claims, Plaintiff would have to demonstrate that he is entitled to tolling of the applicable statute of limitations.  The Court considers two possibilities here:  statutory tolling and equitable tolling.

### a.      Statutory Tolling under C.P.L.R. § 208

Unless inconsistent with the federal policy underlying Section 1983, state tolling rules, like state limitations periods, are controlling.  *Singleton*, 632 F.2d at 191 (citing *Bd. of Regents v. Tomanio*, 446 U.S. 478 (1980)); *see also Pearl*, 296 F.2d at 280; *Carter v. Doe*, No. 05 Civ. 8432 (NRB), 2006 U.S. Dist. LEXIS 51856, at *7 (S.D.N.Y. July 25, 2006).  Under New York law, the plaintiff, not the defendant, bears the burden of proof on the question of whether a limitations period should be tolled.  *Vallen v. Carrol*, No. 02 Civ. 5666 (PKC), 2005 U.S. Dist. LEXIS 20840, at *9 (S.D.N.Y. Sept. 20, 2005) (citing *Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565, 567-68 (3d Dep't 2005); *Assad v. City of New York*, 656 NY.S.2d 669, 669-70 (2d Dep't 1997)).

Section 208 of the New York Civil Practice Law and Rules provides for statutory tolling by reason of "infancy or insanity."  N.Y.C.P.L.R. § 208.  The New York Court of Appeals, however, has interpreted the statute's "insanity" provision narrowly.  After reviewing the legislative history of this provision, the court concluded that "the Legislature meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society."  *McCarthy v. Volkswagen of Am.*, 55 N.Y.2d 543, 548 (1982).  A plaintiff seeking to obtain the benefit of this statute must not only show that he suffered from such an "inability to function in society," but also that his disability was

continuous during the relevant period. *See De Los Santos v. Fingerson*, No. 97 Civ. 3972

(MBM), 1998 U.S. Dist. LEXIS 16657, at *10 (S.D.N.Y. Oct. 21, 1998).  Under *McCarthy*, the

state courts have consistently found that a very high level of incapacity must be demonstrated

before a plaintiff may successfully invoke Section 208.  While a plaintiff's extreme loss of

cognitive function has been found to satisfy the statute's requirements, *see Yannon v. RCA

Corp.*, 517 N.Y.S.2d 205, 207-08 (2d Dep't 1987) (requirements of Section 208 were satisfied

where plaintiff suffered from dementia that rendered him unable to tie his shoes or add two

numbers); even dementia may be insufficient to justify tolling under this provision, *see Burgos v.

City of New York*, 742 N.Y.S.2d 38, 40 (1st Dep't 2002) (finding basis for tolling insufficient

where plaintiff alleged that he suffered from "dementia and psychotic disorder" "due to multiple

medical conditions that . . . existed for many years and [were] permanent").

       In some cases, it may be necessary for the Court to conduct an evidentiary hearing to

determine if a plaintiff's mental state during the statutory period meets the high standard for

insanity under Section 208, but such a hearing is not required in all cases, particularly where the

plaintiff's mental condition does not present a "complex factual issue."  *Carter*, 2006 U.S. Dist.

LEXIS 51856, at *11 (finding that "no hearing is necessary because plaintiff's litigation history

and medical records clearly preclude a finding that [plaintiff's] mental illness was sufficiently

severe . . . to warrant tolling the statute of limitations under Section 208"); *see also De Los

Santos*, 1998 U.S. Dist. LEXIS 16657, at *14-15 (S.D.N.Y. Oct. 21, 1998) (noting that the

suggestion by a "few lower courts" that "the question of a plaintiff's insanity should not be

decided as a matter of law from the pleadings and affidavits alone" is "impossible to square with

rulings by the New York Court of Appeals and the Second Circuit"); *Smith v. Smith*, 830 F.2d

11, 12 (2d Cir. 1987) (deciding, without a hearing, that plaintiff was not entitled to tolling

provisions of Section 208); *Eisenbach v. Metro. Transit Auth.*, 62 N.Y.2d 973 (1984) (same).

In this case, no evidentiary hearing is necessary for the Court to determine whether

Plaintiff is entitled to tolling under Section 208, as, even assuming that all of Plaintiff's factual

allegations regarding the nature of his disability are true, they would not be sufficient to

demonstrate the type of "severe and incapacitating disability" that could render him eligible for

statutory tolling. *Swartz v. Berkshire Life Ins. Co.*, No. 99 Civ. 9462 (JGK), 2000 U.S. Dist.

LEXIS 14039, at *14 (S.D.N.Y. Sept. 22, 2000) (citing *Dumas v. Agency for Child Dev. N. Y.*

*City Head Start*, 569 F. Supp. 831, 833 (S.D.N.Y. 1983)).  Plaintiff contends that he has had

dyslexia since birth, and makes no claim that the symptoms of or difficulties caused by his

dyslexia were in any way worse or different during the statutory period than at other times in his

life.  (*See* 3/19/10 Tr. at p. 3 l. 25 - p.4 l. 3 (stating his dyslexia has been an "ongoing thing").)

He also makes no assertion that he has ever been unable to manage his own day-to-day affairs.

Plaintiff reported to the Court that, prior to his incarceration, he had not only attended school,

but had both participated in and enjoyed school (*see id.* at p. 7, ll. 11-12); he also indicated that

he was able to communicate with the education supervisor at Elmira regarding his need for an

accommodation in any educational program because of his dyslexia (*see id.* at p. 15  l. 21-16 l.7).

Furthermore, the record suggests that Plaintiff has been able to manage his "Type A" diabetes by

carrying around a "diabetic kit," and that, while in police custody, he knew that he needed both

food and his diabetic kit to prevent his blood sugar from dropping.  (*See* Compl. at ¶¶ 68, 72, 75,

77-78.)  In his numerous conferences with this Court, Plaintiff has also demonstrated that he is

capable of communicating, reasoning, expressing his point of view, asking questions, listening,

and following instructions.  None of this is consistent with an "over-all inability to function in society."  *McCarthy*, 55 N.Y.2d at 548.

In addition, although Plaintiff contends that, as a result of his dyslexia, he "can't defend [himself]" (*See* 3/19/10 Tr. at p. 24, ll. 19-20; *see also* Transcript of Telephone Conference before this Court, conducted Jan. 15, 2010 ("1/15/10 Tr.") (Dkt. 24) at p. 6, l. 22 (stating that he is "unable to defend on [his] own")), the Court notes that Plaintiff has demonstrated himself to be entirely capable of seeking assistance from others to assert his rights.  Plaintiff has had no difficulty remembering what happened to him and explaining his injuries, and he did exactly that when he eventually enlisted King's help.  (*See* 11/13/09 Tr. at p. 7 l. 25 - p. 8 l. 8)  After speaking with King, Plaintiff managed to file a grievance with the Department of Corrections and send a letter to the *Pro Se* office requesting assistance.  (*See* King Aff. at ¶ 9.)  When King became unavailable to assist him, Plaintiff found other prisoners to read to him the documents sent by the Court (3/19/10 Tr. at p. 7, ll. 18-20), and he convinced a porter to write a letter to the Court for him (2/2/10 Tr. at p. 6, ll. 3-13).  When unable to find anyone to help him write an opposition memorandum on the instant motion, Plaintiff was able to prepare and present a coherent oral argument to this Court.  (*See* 3/19/10 Tr. at p. 18, ll. 12-17.)  In fact, throughout these proceedings, Plaintiff has demonstrated that he can understand legal principles, state case names from memory, and, in general, advocate on his own behalf.  (*See* 11/13/09 Tr. at p. 8 l. 19 - p.9 l. 16; 2/2/10 Tr. at p. 8, ll. 2-15; p. 10, ll. 13-19; *see generally* 3/19/10 Tr.)  Thus, any argument that Plaintiff has been incapable of taking action to defend his rights is conclusory and

unpersuasive.[13]  Indeed, Plaintiff does not really argue that he has been incapable of taking such action during the statutory period, but rather that he was merely unaware that he should, until advised by King.  (*See* 3/19/10 Tr. at p. 5, ll. 2-19; 12, ll. 10-15.)

Under these circumstances, Plaintiff cannot demonstrate that he is entitled to statutory tolling of the statute of limitations, pursuant to Section 208.

### b.   Equitable Tolling

Alternatively, the Court has considered whether Plaintiff might be entitled to "equitable" tolling of the statute of limitations.  Under New York law, a plaintiff may be entitled to equitable tolling of a statute of limitations where a defendant "wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *Kellogg v. Office of the Chief Med. Exam'r of the City of New York*, 791 N.Y.S.2d 278, 283 n.2 (N.Y. Sup. Ct. Bronx Co. 2004); *Kotlyarsky v. N.Y. Post*, 757 N.Y.S.2d 703, 707 (N.Y. Sup. Ct. Kings Co. 2003).[14]  This state-law

---

[13] Even on a motion to dismiss, the Court need not accept such conclusory allegations as true.  *See Luciano v. City of New York*, 684 F. Supp. 2d 417, 421 (S.D.N.Y. 2010) (noting that "[w]ithout more, the Court does not accept [plaintiff's] conclusory allegation that he was unable to function") (citing *Dumas*, 569 F. Supp. at 834 n.4 (noting that the court "need not assume the correctness of conclusory assertions such as [plaintiff's] statement that 'this affliction left me generally unable to function in society, and I was unable to protect my legal rights in connection with my discharge'"); *De Los Santos*,1998 U.S. Dist. LEXIS 16657, at *12 (S.D.N.Y. Oct. 21, 1998) ("[n]or does plaintiffs' conclusory statement that de los Santos was 'unable to protect his rights because of an overall inability to function' change matters, as it is well established that courts need not assume the correctness of such conclusory allegations")).

[14] As these cases note, the state doctrine of "equitable tolling" is related to the doctrine of "equitable estoppel."  It has been held that the former doctrine may be invoked where the defendant has deceived or misled the plaintiff so as to conceal the cause of action itself, whereas the latter involves circumstances where the plaintiff is fully aware of his cause of action, but misconduct by the defendant leads to the plaintiff's delay in filing suit.  *See Kellogg,* 791 N.Y.S.2d at 283 n.2; *Kotlyarsky,* 757 N.Y.S.2d at 707.  Despite the distinction drawn by these cases, it is clear that both doctrines involve some form of serious misconduct by the defendant, which, in fairness, should then estop the defendant from relying on the statute of limitations as a

doctrine is inapplicable here, as Plaintiff makes no allegation that he was unaware of his claims because of "egregious wrongdoing" by Defendants, such as fraud, misrepresentation or deception.

Nor would Plaintiff be entitled to equitable tolling under similar principles of federal common law. *Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir. 2004) (noting that, under federal law, equitable tolling is limited to "rare and exceptional circumstances" (citing *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam))). As the Supreme Court has recently held, in the context of a petition for a writ of habeas corpus: "To qualify for equitable tolling, a . . . petitioner must show that "'(1) he has been pursuing his rights diligently and (2) [that] some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. __ , 2010 U.S. Dist. LEXIS 4946, at *30 (June 14, 2010) (quoting *Pace v. DiGulielmo*, 544 U.S. 408, 418 (2005)); *see also Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (finding equitable tolling only appropriate where "'extraordinary circumstances' prevented a party from timely performing a required act, and that the party 'acted with reasonable diligence throughout the period he [sought] to toll" (citing *Menefee*, 391 F.3d at 159 (alteration in original))); *accord Smith*, 208 F.3d at 17. Lack of legal knowledge is not a sufficient basis to invoke this equitable tolling doctrine. *See, e.g.*, *Huang v. United States*, No. 03 Civ. 3755 (RPP), 2003 U.S. Dist. LEXIS 17409, at *6 (S.D.N.Y. Oct. 2, 2003) (noting that the courts in this district have "unanimously found" that a "lack of familiarity with the legal system" does not merit equitable tolling).

---

defense. *See Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (noting that, "[u]nder New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense." (citing, *inter alia*, *Kotlyarsky*, 757 N.Y.S.2d at 706)).

Further, this Court has expressly held that a learning disability, even in conjunction with other mental disabilities, does not constitute the extraordinary circumstances necessary to invoke equitable tolling, *see Cannon v. Kuhlmann*, No. 99 Civ. 10101 (DLC), 2000 U.S. Dist. LEXIS 12932, at *4-6 (S.D.N.Y. Sept. 7, 2000) (deeming petitioner's statements that he suffered from a learning disability, low intelligence, memory loss, and took psychiatric medication "insufficient to justify tolling"), and other courts have reached the same conclusion, *see, e.g.*, *Heath v. Ault*, 334 Fed. Appx. 34, 34 (8th Cir. 2009) (finding petitioner who had a learning disability in reading "did not establish the extraordinary circumstances necessary to equitable toll the limitations period."); *Laurson v. Leyba*, 507 F.3d 1230, 1232 (10th Cir. 2007) (finding dyslexia is not a circumstance that justifies the equitable tolling of the statute of limitations).

Additionally, courts in this circuit have repeatedly held that illiteracy, lack of English fluency, lack of prison law library resources or legal assistance, ignorance of the law, and a plaintiff's *pro se* status are not sufficient bases for equitable tolling. *See, e.g,. Marte v. Brown*, No. 09 Civ. 1036 (RJS) (KNF), 2010 U.S. Dist. LEXIS 39294, at *9 (S.D.N.Y. Apr. 20, 2010) ("Courts have rejected lack of access to legal services, illiteracy, lack of English fluency, and ignorance of the law as extraordinary circumstances that 'effectively prohibit [a] petitioner from pursing habeas relief.'" (quoting *Armand v. Strack*, No. 98 Civ. 6650 (RDJ), 1999 U.S. Dist LEXIS 3807, at *12 (E.D.N.Y. Feb. 19, 1999) (alteration in original))); *Ayala v. Fischer*, No. 04 Civ. 3404 (LAK), 2004 U.S. Dist. LEXIS 21955, at *3 (S.D.N.Y. Nov. 2, 2004) ("Ignorance of the law and an inability to read or write do not constitute extraordinary circumstances that would justify equitable tolling."); *see also Gillyard v. Herbert*, No. 01 Civ. 3427 (DC) (GWG), 2003

U.S. Dist. LEXIS 1228, at *10 (S.D.N.Y. Jan. 30, 2003) (noting prisoner's *pro se* status by itself did not merit equitable tolling).

Plaintiff "has not established that he acted at all, let alone with reasonable diligence, to file this action during the limitations period," *Coleman v. City of New York*, No. 08 Civ. 5276 (JG) (LB), 2009 U.S. Dist LEXIS 97692, at *10 (E.D.N.Y. Oct. 20, 2009), nor has he alleged that any conduct by Defendants or any "extraordinary" circumstances led to his delayed filing of his federal claims.  For these reasons, equitable tolling is not warranted in this case.

Accordingly, Plaintiff's Section 1983 claims against Defendants are barred by the statute of limitations, as are any other federal claims that he may be seeking to assert, and I therefore recommend that the Court grant Defendants' motion to dismiss those claims, on that ground.

### B.      Plaintiff's State-Law Claims

To the extent Plaintiff's Complaint asserts any pendent state-law claims against Defendants, those claims are also time-barred.  As Defendants correctly point out (Def. Mem. at 7), Plaintiff's state claims are subject to New York General Municipal Law § 50-i, which provides that any action or special proceeding against the City or its employees "shall be commenced within one year and ninety days after the happening of the event upon which the claim is based."  N.Y. Gen. Mun. Law § 50-i(1)(c); *see Howard v. City of New York*, No. 02 Civ. 1731 (KMK), 2006 U.S. Dist LEXIS 63426, at *8 (S.D.N.Y. Aug. 30, 2006).[15]  The New York Court of Appeals has "consistently treated the year-and-90-day provision contained in

---

[15] Defendants further argue that, should the Court construe Plaintiff's Complaint to assert state law claims, those claims should also be dismissed because of Plaintiff's purported failure to file a notice of claim.  (*See* Def. Mem., at 7.)  The Court need not reach this issue.

21

Section 50-i as a statute of limitations."  *Campbell v. City of New York*, 4 N.Y.3d 200, 203

(2005); *see also Howard*, 2006 U.S. Dist. LEXIS 63426 at *10.

   As discussed above, the "event[s] upon which the claim is based" occurred in early June,

2005, and Plaintiff therefore should have asserted his state claims by early September, 2006.

Although the year-and-90-day statute of limitations is subject to the tolling provisions of

Section 208, *see Kuhland v. City of New York*, 867 N.Y.S.2d 17 (N.Y. Sup. Ct. Queens County,

2008) (table), for reasons set forth above, Plaintiff's dyslexia does not qualify him for the benefit

of either statutory or equitable tolling.  I therefore recommend that the Court also grant

Defendants' motion to dismiss Plaintiff's state-law claims.[16]

### C.   Claims Against Remaining Defendants

   According to Defendants, additionally-named defendants Seewald, Massa, and

John Doe[s] #2 through 14, as members of the New York City Police Department, have not yet

been served with process in this matter, and thus have not appeared in the action.  (*See* Def.

Mem. at 1 n.2.)  Any claims against these additional defendants, however, would be subject to

dismissal under the same statutes of limitations discussed above.  "A district court has the power

to *sua sponte* dismiss claims against nonmoving defendants for failure to state a claim, as long as

---

   [16] Ordinarily, if a plaintiff's federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the plaintiff's state-law claims and should instead dismiss those claims without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).  *See Valencia v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims" (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well.").  Here, however, where Plaintiff's state-law claims are plainly time-barred, it would be in the interest of judicial economy to dismiss them on that ground.

the plaintiff has been given an opportunity to be heard." *Whitfield v. O'Connell,* No. 09 Civ.

1925 (WHP), 2010 U.S. Dist. LEXIS 25584, at *18 n.4 (S.D.N.Y. Mar. 18, 2010) (citing

*Thomas v. Scully,* 943 F.3d 259, 260 (2d Cir. 1991)).  Here, as set forth above, Plaintiff has had a

fair opportunity to be heard on the statute of limitations issue, which equally affects his claims

against all named defendants.  For this reason, I further recommend that the Court dismiss

Plaintiff's federal and state claims against these additional defendants.

## CONCLUSION

For all the foregoing reasons, I respectfully recommend that Defendant's motion to

dismiss the Complaint (Dkt. 14) be granted, that all of Plaintiff's claims asserted in this action be

dismissed in their entirety as time-barred, and that this case be closed on the docket of the Court.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

P. Kevin Castel, United States Courthouse, 500 Pearl Street, Room 2260, New York, New York

10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street,

Room 525, New York, New York, 10007.  Any requests for an extension of time for filing

objections must be directed to Judge Castel.  FAILURE TO FILE OBJECTIONS WITHIN

FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL

PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-*

*CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d

23

298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v.*

*Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      August 9, 2010

Respectfully submitted,


DEBRA FREEMAN
United States Magistrate Judge

Copies To:

Hon. P. Kevin Castel, U.S.D.J.

Mr. Devin Keitt, *pro se*
06-A-2122
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902
(*with copies of electronically-reported decision*)

Alexis L. Leist, Esq.
Assistant Corporation Counsel
100 Church St.
New York, NY 10007